# EXHIBIT A

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

Gloria Lloyd, Individually and as )
Administrator of the Estate of Arthur )
Lloyd, deceased, )
 )
     Plaintiff, )
 ) CIVIL ACTION FILE NO.:
v. )
 )
 )
Specialty Care of Marietta )
and Kindred Healthcare, Inc., )
 )
     Defendants. )

09-1-03255-18

## COMPLAINT FOR DAMAGES

Now comes Gloria Lloyd Individually and as Administrator of the Estate of her husband Arthur Lloyd, deceased, and presents her complaint for damages against Defendants Specialty Care of Marietta and Kindred Healthcare, Inc. as follows:

1.

In this complaint, Plaintiff Gloria Lloyd shows that the Defendants' violations of federal and state law and regulations in the operation of a nursing home, their negligence per se, professional negligence, simple negligence and breach of contract in the provision of nursing home care, treatment and services lead directly and proximately to severe and life threatening illness, pain, suffering, and death of her husband, Arthur Lloyd. Mrs. Lloyd therefore seeks damages for her husband's wrongful death in her individual capacity, and she seeks to recover upon all of her husband's individual claims arising under tort and contract in her capacity as the Administrator of his estate.

PERROTTA, CAHN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
Three Road, NW
Ste 450
Georgia 30305
9-8900
6-1170

## JURISDICTION AND VENUE

2.

Gloria Lloyd hereby subjects herself to the jurisdiction of this Court.

3.

Defendant Specialty Care of Marietta (hereinafter "Specialty Care") is an unincorporated business with its principle place of business at 26 Tower Road in Marietta, Cobb County, Georgia. This Defendant can be served with process by service upon its Executive Director, Valerie Hamilton at 26 Tower Road, Marietta, Cobb County, Georgia 30060.

4.

Defendant Kindred Healthcare, Inc. (hereinafter "Kindred") is a business formed under the laws of the State of Delaware. While this Defendant transacts significant business in this state, it maintains no registered agent for service of process in this state. Its principle place of business in the State of Georgia is located at 26 Tower Road, Marietta, Cobb County, Georgia 30060. This Defendant can be served with process by the means set out under OCGA § 14-2-1510 by service upon the Georgia Secretary of State and notice provided to Paul J. Diaz, President and Chief Executive Officer, Kindred Healthcare, Inc., 680 South Fourth Street, Louisville, Kentucky, 40202-2412.

5.

Based on the foregoing, jurisdiction is proper in this Court; venue is proper under OCGA § 9-10-31.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

## PARTIES

### 6.

Plaintiff Gloria Lloyd is the surviving spouse of Arthur Lloyd, deceased. Mrs. Lloyd seeks to recover for the wrongful death of her husband in her individual capacity. Mrs. Lloyd pursues Mr. Lloyd's individual claims arising in tort and contract in her capacity as the Administrator of Arthur Lloyd's Estate.

### 7.

Defendants Specialty Care and Kindred own and operate a nursing, convalescent and rehabilitation facility in Marietta, Georgia called "Specialty Care of Marietta." (The facility will be called "SCM" hereinafter). These Defendants provided residence, care, treatment and convalescence/rehabilitation services to Arthur Lloyd prior to his death as described below.

## FACTS

### 8.

Mr. Lloyd was 74 years old. He had a number of medical conditions including a history of cardiovascular accident or stroke. He had PVD, atrial fibrillation, Type II diabetes mellitus and hypertension. After a period of hospitalization, on April 12, 2007 Mr. Lloyd was transferred from Kennestone Hospital to SCM. At the time, Mr. Lloyd had a recent history of aspiration pneumonia.

### 9.

Arthur Lloyd became a resident at SCM for long-term care, treatment and services to address his medical conditions and disability. SCM had a duty to provide the care, treatment and services that Mr. Lloyd needed in a skillful and non-negligent manner.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6876

10.

Mr. Lloyd was in reasonably good health and in stable condition when he entered SCM. Recent testing had shown that his WBC and liver function were normal, but did show mild anemia and renal failure.

11.

However, after his admission to the facility, SCM staff failed in numerous ways to provide the care, treatment and services that Mr. Lloyd needed in a skillful and non-negligent manner. As a result, Mr. Lloyd's health took an abrupt turn for the worse, and by May 23, 2007, he was dead.

12.

Specifically, on a number of occasions, SCM staff negligently failed to follow normal protocols for the provision of the care and treatment that Mr. Lloyd needed. SCM staff failed to follow physician's orders with respect to the necessary care and treatment, and negligently failed to notify the physician of Mr. Lloyd's medical conditions when it was necessary that they do so. SCM staff failed to properly develop and follow Mr. Lloyd's resident assessments and care plans by failing to provide the care and treatment he needed, and failing to provide necessary assistance with his activities of daily living. SCM staff also failed to follow the requirements of federal and state law and regulations for the provision of proper care, treatment and services to a resident of a long-term care facility.

13.

As a result of the foregoing, Mr. Lloyd sustained injury, illness, tremendous and unnecessary pain and suffering and ultimately, death as demonstrated in more detail below.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
06 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1721
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
564 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6876

14.

At the time of his admission, Mr. Lloyd had a PEG tube inserted.  According to

physician's orders, Mr. Lloyd was to receive all of his nutrition and hydration through the

feeding tube; he was not to eat or drink orally.  He also had inserted a nephrostomy tube

and Foley catheter for fluid output.

15.

After his admission to SCM, the staff conducted a resident assessment and prepared

a care plan to identify Mr. Lloyd's needs with respect to his activities of daily living, and to

determine his health status and needs.

16.

In their assessment and care plan, the staff noted Mr. Lloyd's feeding and output

tubes.  The staff noted specifically that he was at high risk for dehydration as a result of his

feeding tube, inability to take liquids orally, immobility, incontinence, medications, and

other factors.  Under the care plan and physician's orders, SCM staff was fully responsible

for the provision of Mr. Lloyd's nutrition and hydration through the feeding tube.

17.

The resident assessment and care plan noted that Mr. Lloyd was totally dependant

upon the SCM staff for the activities of daily living including bed mobility, transfers,

facility and room mobility, feeding, dressing and hygiene.

18.

In their resident assessments and care plans, SCM also noted that while he did not

have any bed sores when he entered the facility, he was at risk for the development of

pressure ulcers.  The staff therefore noted that measures were necessary for the avoidance

PERROTTA, CAHN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
06 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
3064 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

of pressure ulcers including pressure relieving devises, a program of turning and repositioning him in his bed, and preventive skin care and medication.

19.

Despite the foregoing, during his residence at SCM the Defendants' staff failed to properly flush and clean Mr. Lloyd's feeding tube. As a result, Mr. Lloyd became severely dehydrated over a significant period of time. Dehydration aggravated Mr. Lloyd's developing infection, renal failure and rendered his diabetes uncontrollable.

20.

The Defendant's staff also failed to properly monitor, flush and clean Mr. Lloyd's output tubes. The Defendant staff failed to properly address other medical conditions such as constipation and UTI.

21.

The staff failed to provide adequate measures for the avoidance of decubitus ulcers as identified and required in Mr. Lloyd's care plan. As a result, Mr. Lloyd developed a dangerous pressure ulcer on his buttocks and other ulcers on his leg during his short stay at the facility. There is no note that the staff took any measures at all to address Mr. Lloyd's developing pressure ulcers.

22.

As a result of the foregoing, Mr. Lloyd had a number of potential sources for infection including infected tube insertion sites, decubitus ulcers and UTI. Not surprisingly, Mr. Lloyd did in fact develop a significant infection while under Defendant's care. Aggravated by his severe dehydration, Mr. Lloyd developed a severe systemic infection which lead ultimately to his death.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Istonic Bradley Building
5 South Public Square
artersville, Georgia 30120
770-382-8900
'oll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
06 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
364 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton  Georgia 30721
(706) 275-6022
Fax (706) 275-6076

23.

In fact, on a number of occasions, the Defendant's staff noted the signs and symptoms of severe infection, but they failed to report the condition to his treating physician, or to get him timely medical care to address the infections.

24.

On April 18, 2007 the staff noted a sign of infection. Mr. Lloyd had a productive cough with yellow green sputum. A nurse practitioner examined him but no sputum culture or treatment was performed.

25.

Another sign of infection occurred on April 21, 2007. At that time, Defendant's staff nurse noted that Mr. Lloyd was in respiratory distress. Mr. Lloyd was found drooling with an altered level of consciousness. The doctor was contacted and ordered SCM to transport Mr. Lloyd to the ER evaluation. The nurse called 911, but then cancelled the call before EMS arrived. She did not notify the doctor that she cancelled the call.

26.

Yet another sign of Mr. Lloyd's developing infection occurred on April 30. At that time Mr. Lloyd was noted to have a significant change in mental status; he had become very lethargic. He also had weakness in his arm and was no longer able to lift it. His heart rate was elevated and irregular, his blood pressure was elevated. This was the second episode of an abrupt change in Mr. Lloyd's baseline.

27.

Also at that time, Defendants noted that Mr. Lloyd's blood sugar level was dangerously high at 398. This was likely a result of dehydration.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

Page 7 of 57

28.

Labs drawn on May 7 showed a progression in Mr. Lloyd's renal failure, yet another evidence of infection.

29.

Repeated testing on May 7 and 8 of 2007 revealed that Mr. Lloyd had high blood sugar concentration. Once again, this was evidence of his increasing dehydration.

30.

More evidence of Mr. Lloyd's developing infection occurred on May 9. After noticing decreased output from Mr. Lloyd's nephrostomy tube, an LPN flushed the tube and got back cloudy yellow urine with "whitish particles" in it. Later, the nephrostomy bag drained dark, thick urine. Mr. Lloyd was noted as having a high temperature at the time. The nurse practitioner ordered a urinalysis, culture and sensitivity which showed significant infection.

31.

On May 9, a chest x-ray revealed modest right lower lobe, and slight left lower lobe infiltrates, meaning that Mr. Lloyd had developed pneumonia.

32.

On May 14, 2007, a complete blood count and comprehensive metabolic panel were drawn revealing that Mr. Lloyd had an active infection and impaired kidney function.

33.

Three times on May 17, 19 and 20, Mr. Lloyd was determined to have dangerously high serum glucose (blood sugar) levels of 471, 431 and 495, respectively. Once again, Defendants were unable to gain control of Mr. Lloyd's blood sugar levels due to his severe

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
artersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

dehydration. The staff failed to notify the doctor of these high blood sugar levels as per his previous order.

34.

Mr. Lloyd's infection continued to develop. On May 20, 2007, Mr. Lloyd's temperature became dangerously elevated reaching 103.8. Defendants responded only by providing Tylenol. Despite the dangerously high temperature, the Defendants did not notify Mr. Lloyd's doctor of his condition. Because of Mr. Lloyd's consistently elevated blood glucose levels and fever spikes, it was obvious that there was an underlying infection. The Defendants should therefore have notified the doctor.

35.

On May 21, at 6:00 am, the Defendant's chart indicates that Mr. Lloyd was once again found to have elevated blood glucose and a high temperature, though the exact levels were not recorded. But by 8:00 am his temperature was 100.3. At 1:00 pm his blood glucose level was 419.

36.

That same day, Defendant's staff obtained a urine culture which showed that Mr. Lloyd still had a urinary tract infection. The causative agent was Pseudomonas Aeruginosa, a common nosocomial infection seen in catheterized patients.

37.

As a result of his worsening condition, on May 21, 2007, Mr. Lloyd was finally taken to Kennestone Hospital. By the time he arrived at the hospital, Mr. Lloyd was essentially dying as a result of severe systemic infection confounded by severe dehydration as a result of the lack of care he received at SCM.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
364 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6876

38.

Hospital staff documented that Mr. Lloyd had altered mental status, appeared chronically ill, frail, cachectic, and he was in moderate distress.  Hospital diagnostic studies showed significant muscle damage, but the studies were not indicative of cardiac muscle damage.

39.

The hospital staff noted that an attempt was made to flush Mr. Lloyd's feeding tube, but they could not make it flow, so they had to administer medicines by IV.  This demonstrates the reason for his severe dehydration.

40.

The hospital staff found that Mr. Lloyd had an elevated pulse and temperature of 102.3, evidence of his infection.  Mr. Lloyd's serum sodium, blood glucose and potassium levels were markedly elevated, and his calcium levels were depressed, all demonstrating his severe dehydration.  BUN and creatinine levels were significantly elevated indicating severe renal failure.  He had a build up of nitrogen in his blood again evidencing severe dehydration and infection.  Mr. Lloyd's liver enzymes were elevated secondary to either shock or sepsis.  His WBC was significantly elevated at 18.6.  Urinalysis revealed infection.

41.

Also at the hospital Mr. Lloyd was noted to have a severe pressure ulcer on his right buttock and a wound on his right leg.  The right buttock wound was described as 11cm long with irregular edges and serosanguineous drainage.  There were also discolorations on the right heel and skin loss on the scrotum.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

42.

Based on these findings, the hospital medical staff diagnosed 1) acute altered mental status, 2) acute UTI with fever, 3) Leukocytosis; sepsis/bacteremia, 4) acute transaminitis (indicating early stages of multiorgan failure), 5) acute marked azotemia with exacerbation of chronic kidney disease likely secondary to marked dehydration, 6) acute marked hyperkalemia, 7) acute exacerbation of insulin dependant diabetes mellitus, 8) multi infarct dementia and 9) acute exacerbation and chronic atrial fibrillation with rapid ventricular response

43.

On May 21, 22, and 23, stool, sputum, blood and urine cultures were drawn and demonstrated the presence of multiple toxic organisms including C. diff. toxin, Coagulase negative staphylococcus, and methicillin resistant staphylococcus aureus (MRSA). An infectious disease consult revealed sepsis probably secondary to C. difficile, colitis and dehydration. Mr. Lloyd also had some components of urosepsis.

44.

Surprisingly, a bilateral X-ray of Mr. Lloyd's hip/pelvis area was completed on May 22, which found an apparent dislocation of his right total hip prosthesis.

45.

On May 23, 2007 a general surgery consult report stated that Mr. Lloyd was found to be in septic shock. Mr. Lloyd expired at 3:58pm. Mr. Lloyd's official cause of death listed on his Death Certificate is cardiac arrest secondary to sepsis.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
364 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6012
Fax (706) 275-6076

## COUNT I - NEGLIGENCE PER SE BASED UPON VIOLATION OF REQUIREMENTS

## FOR LONG TERM CARE FACILITIES AT 42 CFR §483.1 et seq.

46.

SCM is a licensed and certified long-term care facility that provides skilled nursing care as a participant in the Medicare program and that provides nursing care as a participant in the Medicaid program; SCM receives funding under the Medicare and Medicaid programs.

47.

The U.S. Department of Health & Human Services has promulgated a number of regulations pursuant to its authority under OBRA at 42 USCA § 1395i-3 related to the care, treatment and services provided to residents of skilled nursing facilities participating in the Medicare program and nursing facilities participating in the Medicaid program. Among those regulations are the following:

a) 42 CFR §483.10 and 15(a) provide that the resident has a right to live a dignified existence,

b) 42 CFR §483.13.(c) requires the facility to implement protocols to protect the resident from neglect,

c) 42 CFR §483.13.(c)(2) requires that all instances of patient neglect be reported to the facility administrator and other officials in accordance with state law,

d) 42 CFR §483.13.(c)(3) requires that the facility maintain evidence of its investigation into patient neglect and must prevent future neglect of patients,

e) 42 CFR §483.13.(c)(4) requires that results of neglect investigation be reported to the administrator and appropriate state authorities,

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

f) 42 CFR §483.15 requires the facility to care for its residents in a manner that maintains and enhances the resident's quality of life,

g) 42 CFR §483.15.(e)(1) requires that each resident be provided services in the facility to accommodate their individual needs,

h) 42 CFR §483.20.(b) and (g) requires the facility to maintain a comprehensive and accurate assessment of the resident's medical needs, including the resident's general health, physical functioning and skin condition,

i) 42 CFR §483.20.(k) requires that the facility prepare an accurate comprehensive care plan that addresses the patient's medical and nursing needs,

j) 42 CFR §483.20.(k)(3) requires that services provided or arranged by the facility meet professional standards of quality and be provided by qualified persons,

k) 42 CFR §483.25. requires the facility to provide services to attain and maintain the highest practicable physical, mental and psychosocial well being in accordance with the resident's assessments and Care Plan,

l) 42 CFR §483.25.(a)(3) requires the facility to provide a resident who is unable to carry out the activities of daily living received necessary services to maintain good nutrition and personal hygiene,

m) 42 CFR §483.25.(c) requires the facility to take appropriate measures to prevent bed sores,

n) 42 CFR §483.25.(c)(1) requires that facility ensure that a patient who enters the facility without bed sores does not develop bed sores after admission,

o) 42 CFR §483.25.(c)(2) requires that facility ensure that a patient who develops bed sores gets appropriate treatment to promote healing and to prevent infection related to the wounds, and to prevent new bed sores from developing,

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

p) 42 CFR §483.25.(g)(2) requires that the facility provide a resident fed through a feeding tube received appropriate care and services to avoid aspiration pneumonia, dehydration, and metabolic abnormalities,

p) 42 CFR §483.25.(j) requires the facility to provide each resident sufficient fluid intake to maintain proper hydration and health,

r) 42 CFR §483.25.(k) requires the facility to provide proper care and services related to parenteral and enteral fluids,

s) 42 CFR §483.30. requires the facility to maintain an adequate nursing staff,

t) 42 CFR §483.40.(a) requires the facility to ensure that each patient's medical care is supervised by a physician,

u) 42 CFR §483.75. requires that the facility be administered in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well being of each resident,

v) 42 CFR §483.75. requires properly trained, qualified and competent staff.

w) 42 CFR §483.75.(b) requires the facility to operate and provide services in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

x) 42 CFR §483.75.(k)(1) requires the facility to maintain clinical records in accordance with accepted professional standards and practices which are complete and accurate.

48.

As a licensed and certified long-term care facility which receives funding under the Medicare and Medicaid programs, the Defendant long term care facility is subject to the

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
artersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

above described federal regulations for the provision of care, treatment and services to residents of the facility.

49.

As described in this complaint, the Defendants violated the above regulations of the U.S. Department of Health and Human Services in the following acts and omissions, among others to be demonstrated by the evidence:

a) Defendants failed to administer the nursing facility in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well being of Mr. Lloyd,

b) Defendants failed to implement protocols to protect Mr. Lloyd from neglect,

c) Defendants failed to operate and provide services to Mr. Lloyd in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

d) Defendants failed to provide or arrange services for Mr. Lloyd that met professional standards of quality,

e) Defendants failed to maintain an adequate nursing staff to provide for Mr. Lloyd's needs,

f) Defendants failed to provide properly trained, qualified and competent staff to care for Mr. Lloyd,

g) Defendants failed to maintain complete and accurate clinical records related to the care and treatment of Mr. Lloyd in accordance with accepted professional standards and practices,

h) Defendants failed consistently to make any effort to protect Mr. Lloyd from neglect,

PERROTTA, CAHN & PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

i) Defendants failed in its duty to report all instances of Mr. Lloyd's neglect to the facility administrator and appropriate state authorities,

j) Defendants failed to report results of any neglect investigation to the Administrator and appropriate state authorities,

k) Defendants failed to properly train and supervise the nursing staff to provide the appropriate care, treatment and services that Mr. Lloyd needed,

l) Defendants failed to communicate to Mr. Lloyd's physician's his medical conditions such as his repeated signs of severe infection, difficulty in controlling serum glucose levels, wounds and sores,

m) Defendants failed to follow physician's orders with respect to the care and treatment that Mr. Lloyd needed,

n) Defendants failed to provide prompt medical attention to Mr. Lloyd when he needed it,

o) Defendants failed to maintain a comprehensive and accurate assessment of Mr. Lloyd's medical needs,

p) Defendants failed to implement an appropriate program for the prevention of bed sores,

q) Defendants failed to properly monitor Mr. Lloyd for the development of pressure ulcers.

r) Defendants allowed Mr. Lloyd to develop pressure ulcers after he entered the facility,

s) Defendants failed to implement a program of turning Mr. Lloyd, providing appropriate dressings, medicines and other care and treatment to alleviate Mr. Lloyd's bed sores and to prevent infections,

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
119 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

t)  Defendants failed to provide proper wound care at his tube entry sites,

u)  Defendants failed to properly maintain Mr. Lloyd's feeding and output tubes,

v)  Defendants allowed Mr. Lloyd to become severely dehydrated,

w)  Defendants repeatedly failed to provide proper care and services to address Mr. Lloyd's developing infections,

x)  Defendants failed to properly monitor and address Mr. Lloyd's diabetes and in particular, his blood glucose levels,

y)  Defendants failed to provide proper care and services to address Mr. Lloyd's severe constipation,

z)  Defendants failed to provide proper care and services to address Mr. Lloyd's UTI,

50.

The Defendants' acts and omissions constituting violation of the above-referenced federal regulations at 42 CFR §483.1 et seq. constitute negligence per se or negligence as a matter of law.

51.

Defendants' failure to comply with the above federal mandates lead directly to the serious injury, illness, infection, terrible pain, suffering, anguish and grief, and ultimately lead to the death of Arthur Lloyd.

52.

As a result of the Defendant's negligence per se and resultant damages and harm, the Plaintiff is entitled to an award of damages in her individual and representative capacities as set out below.

PERROTTA, CAHN & PRIETO, P C.

*Main Office*
Historic Bradley Building
5 South Public Square
artersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
'06 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

## COUNT II - NEGLIGENCE PER SE BASED UPON VIOLATION OF REQUIREMENTS OF THE GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE FACILITIES AT OCGA §31-8-100 et seq.

53.

The State of Georgia has promulgated the *Bill of Rights for Residents of Long-term Care Facilities* at OCGA §31-8-100 et seq. which sets out requirements for those providing care, treatment and services to residents of long-term care facilities in this state. In particular, OCGA § 31-8-108(a) requires that residents of long-term care facilities receive care, treatment and services that are adequate and appropriate and which must be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including those listed in the preceding Count of this complaint), and with respect for the resident's personal dignity, among other requirements.

54.

Pursuant to its authority granted by statute, the Georgia Department of Human Resources has promulgated a number of regulations for those providing care, treatment and services to residents of long-term care facilities. In particular, GA ADC 290-5-39-.07 requires that each resident be provided with care, treatment and services which are adequate and appropriate for the condition of the resident as determined by the resident's developing care plan. The regulation also requires that services be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including the state laws and federal regulations identified above).

55.

The Defendants violated the provisions of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and the regulations of the Georgia Department of Human

PERROTTA, CAHN & PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

Resources identified above in all of the acts and omissions that are described in this Complaint for Damages.

56.

The Defendant's violations of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and the regulations of the Georgia Department of Human Resources set out above constitute negligence per se or negligence as a matter of law.

57.

Defendants' failure to comply with the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and the regulations of the Georgia Department of Human Resources set out above lead directly to the serious injury, illness, infection, terrible pain, suffering, anguish and grief, and ultimately lead to the death of Arthur Lloyd.

58.

As a result of the Defendant's acts and omissions constituting negligence per se, and the resultant damages and harm, the Plaintiff is entitled to an award of damages in her individual and representative capacities as set out below.

## COUNT III – STATUTORY REMEDIES FOR VIOLATION OF FEDERAL AND STATE STATUTES AND REGULATIONS IN THE OPERATION OF A PERSONAL CARE HOME

59.

SCM is a "personal care home" as that term is defined under OCGA §31-7-12.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
-Istoric Bradley Building
5 South Public Square
artersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

60.

Pursuant to OCGA §31-8-133, residents of personal care homes in Georgia have been granted certain rights which are enumerated in the regulations promulgated by the Georgia Department of Human Resources at GA ADC 290-5-35 et seq.

61.

Among the regulations promulgated by the Georgia Department of Human Resources for the operation of personal care homes is GA ADC 290-5-35-.18 which provides that each resident of a personal care home must receive care and services which shall be adequate, appropriate and *in compliance with applicable federal and state law and regulations* (including the federal and state law and regulations identified in the preceding Counts of this Complaint).

62.

As described in detail above, the Defendants violated regulations of the U.S. Department of Health and Human Services at 42 CFR 483.1 et seq., the *Georgia Bill of Rights for Residents of Long Term Care Facilities* at OCGA §31-8-100 et seq. and the regulations of the Georgia Department of Human Resources at GA ADC 290-5-35 et seq. and 290-5-39-.07. in the following acts and omissions, among others:

a) Defendants failed to administer the nursing facility in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well being of Mr. Lloyd,

b) Defendants failed to implement protocols to protect Mr. Lloyd from neglect,

c) Defendants failed to operate and provide services to Mr. Lloyd in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

PERROTTA, CAHN &
PRIETO, P. C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
1 Peachtree Road, NW
Suite 450
Georgia 30305
382-8900
386-1170

d) Defendants failed to provide or arrange services for Mr Lloyd that met professional standards of quality,

e) Defendants failed to maintain an adequate nursing staff to provide for Mr. Lloyd's needs,

f) Defendants failed to provide properly trained, qualified and competent staff to care for Mr. Lloyd,

g) Defendants failed to maintain complete and accurate clinical records related to the care and treatment of Mr. Lloyd in accordance with accepted professional standards and practices,

h) Defendants failed consistently to make any effort to protect Mr. Lloyd from neglect,

i) Defendants failed in its duty to report all instances of Mr. Lloyd's neglect to the facility administrator and appropriate state authorities,

j) Defendants failed to report results of any neglect investigation to the Administrator and appropriate state authorities,

k) Defendants failed to properly train and supervise the nursing staff to provide the appropriate care, treatment and services that Mr. Lloyd needed,

l) Defendants failed to communicate to Mr. Lloyd's physician's his medical conditions such as his repeated signs of severe infection, difficulty in controlling serum glucose levels, wounds and sores,

m) Defendants failed to follow physician's orders with respect to the care and treatment that Mr. Lloyd needed,

n) Defendants failed to provide prompt medical attention to Mr. Lloyd when he needed it,

PERROTTA, CAHN & PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

o) Defendants failed to maintain a comprehensive and accurate assessment of Mr. Lloyd's medical needs,

p) Defendants failed to implement an appropriate program for the prevention of bed sores,

q) Defendants failed to properly monitor Mr. Lloyd for the development of pressure ulcers.

r) Defendants allowed Mr. Lloyd to develop pressure ulcers after he entered the facility,

s) Defendants failed to implement a program of turning Mr. Lloyd, providing appropriate dressings, medicines and other care and treatment to alleviate Mr. Lloyd's bed sores and to prevent infections,

t) Defendants failed to provide proper wound care at his tube entry sites,

u) Defendants failed to properly maintain Mr. Lloyd's feeding and output tubes,

v) Defendants allowed Mr. Lloyd to become severely dehydrated,

w) Defendants repeatedly failed to provide proper care and services to address Mr. Lloyd's developing infections,

x) Defendants failed to properly monitor and address Mr. Lloyd's diabetes and in particular, his blood glucose levels,

y) Defendants failed to provide proper care and services to address Mr. Lloyd's severe constipation,

z) Defendants failed to provide proper care and services to address Mr. Lloyd's UTI,

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (706) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
3064 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

63.

Pursuant to OCGA § 31-8-136(a), the Plaintiff is entitled to an award of damages in the amount of $1,000.00 for each of the Defendants' individual violations of the regulations of the U.S. Department of Health and Human Services at 42 CFR 483.1 et seq., the provisions of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* at OCGA §31-8-100 et seq. and the regulations of the Georgia Department of Human Resources at GA ADC 290-5-35 et seq. and 290-5-39- 07.

64.

Alternatively, pursuant to OCGA § 31-8-136(a) the Plaintiff is entitled to an award of actual damages for each of the Defendant's violations of the federal and state law and regulations identified herein.

65.

As permitted under OCGA §31-8-136(c), the Plaintiff asserts her cause of action in this Count of the Complaint in addition to all other rights, remedies and causes of action stated in this complaint.

66.

Pursuant to OCGA § 31-8-136(a), Plaintiff herein is entitled to an award of punitive damages for each of the Defendant's individual and numerous acts and omissions in violation of the Federal and state law and regulations cited in this Complaint.

## COUNT IV - GENERAL NEGLIGENCE

67.

Arthur Lloyd entered into a contract for the provision of long-term residence, care, treatment and services with the Defendants in this action, and pursuant to their agreement

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

the Defendants had a duty to exercise ordinary care in the provision of that care, treatment and services to Mr. Lloyd. The Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Mr. Lloyd, and he sustained serious injury, illness, infection, great pain and suffering and died as a result as demonstrated below.

68.

Upon information and belief, Defendants failed to establish and implement policies and procedures designed to provide appropriate care, treatment and services to SCM residents including Mr. Lloyd.

69.

Upon information and belief, Defendants failed to properly prepare SCM's budget so as to use its resources effectively and efficiently to maintain appropriate care treatment and services to its residents including Mr. Lloyd.

70.

Upon information and belief, Defendants failed to implement policies, practices and protocols to protect residents, including Mr. Lloyd from neglect.

71.

Defendants failed to operate and provide services to Ms. Lloyd in compliance with acceptable professional standards and principles that apply to professionals providing said services.

72.

Upon information and belief, Defendants failed to maintain an adequate nursing and non-professional staff to provide for Mr. Lloyd's needs.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
1964 Peachtree Road NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

73.

Defendants failed to provide properly trained, qualified and competent staff to care for Mr. Lloyd.

74.

Upon information and belief, Defendants failed to properly train and supervise the SCM staff that was responsible for the provision of care, treatment and services to Mr. Lloyd.

75.

Defendants failed to provide proper wound care at Mr. Lloyd's tube entry sites.

76.

Defendants failed to properly maintain Mr. Lloyd's feeding and output tubes.

77.

Defendants allowed Mr. Lloyd to become severely dehydrated.

78.

Defendants repeatedly failed to provide proper care and services to address Mr. Lloyd's developing infections.

79.

Defendants failed to properly monitor and address Mr. Lloyd's diabetes and in particular, his blood glucose levels.

80.

Defendants failed to provide proper care and services to address Mr. Lloyd's severe constipation.

81.

Defendants failed to provide proper care and services to address Mr. Lloyd's UTI.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road NW
Suite 450
Atlanta Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

82.

Defendants repeatedly failed to properly and fully communicate with Mr. Lloyd's treating physician about his continuing evidence of severe infection.

83.

Defendants repeatedly failed to properly and fully communicate with Mr. Lloyd's treating physician about their inability to maintain control of his serum glucose levels.

84.

Defendants failed to provide appropriate care, treatment and services for the prevention of pressure ulcers, and for the care and treatment of existing and developing pressure ulcers.

85.

Defendants failed to properly monitor and chart the condition of Mr. Lloyd's developing pressure ulcers, and the course of care and treatment for his developing pressure ulcers.

86.

Defendants failed to implement a program of turning and repositioning Mr. Lloyd in his bed, failed to provide proper and timely pressure relieving devises for Mr. Lloyd and failed to properly maintain wound care, medicines and wound dressings to address Mr. Lloyd's pressure ulcers.

87.

Defendants failed to properly and fully communicate the condition of Mr. Lloyd's skin breakdown to his treating physicians.

PERROTTA, CAHN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
706 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
764 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

88.

Defendants failed to follow physician's orders for the care and treatment of Mr. Lloyd's existing and developing pressure ulcers.

89.

As a direct and proximate result of each of the failures detailed above, Arthur Lloyd developed a number of sources of potential infection including bed sores, infected tube entry sites and UTI. Mr. Lloyd eventually developed a systemic infection which lead to his death.

90.

In addition, as a direct result of the Defendant's acts and omissions, Mr. Lloyd became severely dehydrated, and this aggravated the condition of his infections and facilitated the systemic infection which ultimately caused his death.

91.

Many of the Defendant's acts and omissions described herein are ministerial in nature and constitute simple negligence for which the Defendants are liable to the Plaintiff.

92.

As a result of the foregoing acts and omissions and the resultant injuries, illness, infection, suffering and death of Arthur Lloyd, the Plaintiff is entitled to recover from the Defendants as set out below.

<u>COUNT V - PROFESSIONAL NEGLIGENCE</u>

93.

Arthur Lloyd entered into a contract with the Defendants for the provision of long-term residence, care, treatment and services at the Defendant SCM facility, and Defendants failed to provide that care, treatment and service as described herein.

PERROTTA, CAHN & PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

94.

Pursuant to the requirements of OCGA §9-11-9.1, the Plaintiff has attached hereto the affidavit of Corrie Pierce who is a Registered Nurse duly licensed to practice nursing by the State of Georgia. Nurse Pierce has prepared an affidavit which sets forth the Defendants' acts and omissions related to the care, treatment and services provided to Arthur Lloyd which proximately caused his severe injury, illness, infection, suffering and death, and which illustrate Defendants' failure to provide the degree of care and skill required of these Defendants in their professions, as set out below. The Plaintiff hereby incorporates by this reference the entire contents of Nurse Pierce's affidavit and CV.

95.

Pursuant to her education, training and experience, Nurse Pierce is fully familiar with the signs and symptoms of infection in a patient in a nursing home. Nurse Pierce is trained to contact the patient's treating physician to report any signs and symptoms of infection, and to obtain prompt and appropriate medical care and treatment for a patient whose infection so requires.

96.

Pursuant to her education, training and experience, Nurse Pierce is fully familiar with the proper monitoring, maintenance, cleaning, flushing, handling and use of PEG tubes for the maintenance of nutrition and hydration in patients that are unable to take food or liquids orally.

97.

Pursuant to her education, training and experience, Nurse Pierce is fully familiar with the proper monitoring, maintenance, cleaning, flushing, handling and use of

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
3964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

nephrostomy tubes and Foley catheters for maintaining, balancing and monitoring the patient's fluid output.

98.

Pursuant to her professional education, training and experience, Nurse Pierce is fully familiar with the incidence of skin breakdown in patients in a medical facility. Specifically, she is fully familiar with the causes of skin breakdown and the proper monitoring of patients for signs and symptoms of skin breakdown. She is familiar with all aspects of care, treatment and services for the prevention and treatment of skin breakdown in patients. She is also familiar with the proper monitoring, cleaning and maintaining patient's tube insertion sites.

99.

Nurse Pierce is trained to provide care and services necessary to address patients with diabetes. She is trained to recognize when there is difficulty maintaining the diabetic patient's blood glucose levels, and to report that difficulty to the patient's treating physician.

100.

Nurse Pierce is familiar with development and implementation of assessments and care plans addressing the patients' needs for care and treatment, and the patient's needs with respect to the activities of daily living. This includes the developments of care plans for addressing patient's feeding and output tubes, diabetes, risk of infection and prevention and treatment of bed sores.

101.

Nurse Pierce is trained to fully and accurately comply with all physicians' orders for nursing care and services provided to the patient.

Page 29 of 57

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

102.

Based upon the foregoing, Nurse Pierce is fully competent to testify about the matters set forth below.

103.

The standard of care for long term patient care facilities requires that nursing and non-professional staff provide appropriate care, treatment and services to residents who have signs and symptoms of severe infection, to notify the treating physician of the signs and symptoms of severe infection, and to provide prompt and appropriate medical care to patients who exhibit signs and symptoms of severe infection.

104.

Signs and symptoms of severe infection or other severe medical condition exhibited by Arthur Lloyd include productive cough with yellow green sputum, respiratory distress, drooling with an altered level of consciousness, a significant change in mental status; lethargy, elevated and irregular heart beat, elevated blood pressure. Other signs of infection include a nephrostomy tube was draining dark urine and elevated temperature.

105.

Each time that the Defendant's nursing staff failed to contact Mr. Lloyd's treating physician or to seek prompt medical attention to address the signs and symptoms of severe infection or other severe medical problems in the patient, they breached the standard of care required of nurses in a long-term care facility.

106.

The standard of care for long term patient care facilities requires that nursing staff provide appropriate care, treatment and services related to the patient's PEG tube, so as to

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

avoid infection and maintain appropriate levels of nutrition and hydration in the patient who is unable to take food or fluids by mouth.

107.

Such care, treatment and services include careful monitoring to ensure that tubes are maintained in a clean, sanitary condition, and that they do not become blocked. PEG tubes must be flushed at least 4-5 times per day to avoid blockage, and to ensure that the patient receives all of the fluid necessary to maintain proper hydration.

108.

When the Defendant nursing staff failed to properly monitor and maintain Arthur Lloyd's PEG tube, when they failed to properly flush Mr. Lloyd's PEG tube, failed to keep the PEG tube clean and open, they breached the standard of care required of long-term care facility staff.

109.

The standard of care for long term patient care facilities requires that nursing staff follow physician's orders to the letter to maintain proper patient hydration levels at all times.

110.

Such care, treatment and services include the proper handling of PEG tubes described above.

111.

When the Defendant nursing staff allowed Mr. Lloyd to become seriously dehydrated, they breached the standard of care required of long-term care facility staff.

PERROTTA, CAHN & PRIETO, P C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
306 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

112.

The standard of care for long term patient care facilities requires that nursing and non-professional staff provide appropriate care, treatment and services to residents who have been determined to be at high risk for the development of pressure ulcers.

113.

Measures to prevent skin breakdown include careful patient monitoring, proper charting of the condition of the patient's skin, implementation of a program for turning the patient in his bed, providing pressure relieving devises and keeping pressure points clean and dry.

114.

The Defendants breached the standard of care for nursing care facilities when they:

a) Failed to implement a program of turning and repositioning Mr. Lloyd in his bed to prevent pressure ulcers,

b) Failed to timely provide pressure relieving devises for Mr. Lloyd,

c) Failed to properly monitor Mr. Lloyd for the development of pressure ulcers,

d) Failed to adequately chart the condition of Mr. Lloyd's skin to prevent pressure ulcers.

115.

As a direct and proximate result of the Defendants' failure to follow the appropriate measures for the prevention of pressure ulcers as outlined above, Arthur Lloyd developed skin breakdown which lead to development of pressure ulcers.

116.

When a resident patient has pressure ulcers, the standard of care for nursing care facilities requires that the staff properly develop and follow the care plan, Resident

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
364 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

Assessment Protocols and physician's orders and to provide appropriate care, treatment and services to address the patient's pressure ulcers.

117.

Proper measures for the care and treatment of patients who have experienced skin breakdown include careful patient monitoring, proper charting of the condition of the skin breakdown and proper charting of the course of treatment for skin breakdown. Measures also include following a program of turning the patient in bed, providing appropriate and timely pressure relieving devises and maintaining proper wound care, medicines and dressings as ordered by the physician. Nurses are also required to fully communicate the condition of the patient's skin to the treating physician, and to follow physician's orders with respect to the care and treatment of pressure ulcers.

118.

The Defendants breached the standard of care required of nursing care facilities when they:

a) Failed to follow the resident assessment and care plan for the care and treatment of pressure ulcers,

b) Failed to implement a program of turning Mr. Lloyd in his bed,

c) Failed to promptly provide pressure relieving devises,

d) Failed to properly monitor Mr. Lloyd's developing pressure ulcers,

e) Failed to properly record information about Mr. Lloyd's developing pressure ulcers,

f) Failed to properly chart their course of care and treatment for Mr. Lloyd's developing pressure ulcers,

g) Failed to properly maintain wound care and wound dressings,

PERROTTA, CAHN & PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
519 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

h) Failed to fully communicate the development of Mr. Lloyd's pressure ulcers to his treating physician,

i) Failed to follow physician's orders with respect to the care and treatment provided for Mr. Lloyd's pressure ulcers.

119.

The standard of care for nursing staff in a long-term care facility requires that the staff follow the requirements of the care plan and physician's orders with respect to the proper handling of patient's feeding and output tubes, proper care for diabetes, proper measures for avoiding and addressing patient infection and proper prevention and treatment of bed sores.

120.

The Defendant's staff breached the standard of care required of nursing staff in a long-term care facility when they failed to follow Mr. Lloyd's care plan and physician's orders with respect to the above aspects of patient care, treatment and services.

121.

As a direct and proximate result of the Defendant's acts and omissions which breached the standards of care required of long-term care facility nursing staff, Arthur Lloyd sustained injury and developed a serious, systemic infection which lead to serious illness, pain suffering, and ultimately death.

122.

All of the Defendant's staff's acts and omissions described above constitute professional negligence as a result of which the Plaintiff is entitled to recover from the Defendants as set out below.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

## COUNT VI - UNFAIR OR DECEPTIVE PRACTICES TOWARD THE ELDERLY

### 123.

At the time that the Defendants solicited Arthur Lloyd to become a resident at SCM, and during the entire time that he remained a resident at the facility prior to his death, he was an "elderly" person as that term is defined in OCGA §10-1-850(2).

### 124.

At the time that the Defendants solicited Mr. Lloyd to become a resident at SCM, and during the period that he remained a resident at the facility prior to his death, he was a "disabled person" as that term is defined under both OCGA § 10-1-850(1)(A) and (B).

### 125.

At the time that the Defendants solicited Arthur Lloyd to become a resident at SCM, and during the period that he remained a resident at SCM prior to his death, the Defendants represented to Mr. Lloyd that the medical and nursing care, treatment, services and residence to be provided to him would be of a sufficient standard and quality to provide for all of his needs. The Defendant's representations were false.

### 126.

The Defendants knowingly and intentionally made the false representations to Mr. Lloyd despite their actual knowledge that the medical and nursing care, treatment, services and residence that they would in reality provide would be substandard, and would not be of the quality necessary to meet Mr. Lloyd's needs as fully demonstrated above. Defendants made the false representations in order to solicit Mr. Lloyd to become a resident of their nursing home and for monetary gain.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9609
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

127.

The Defendants' conduct described in the preceding paragraphs constitutes a "deceptive trade practice" under the Uniform Deceptive Trade Practices Act at OCGA §10-1-370 and 372(a)(7). The Defendant's conduct also and constitutes an "unlawful act or practice" under the Georgia Fair Business Practices Act of 1975 at OCGA §10-1-390 and 393(b)(7).

128.

Arthur Lloyd sustained extreme damages, injury, illness, suffering and death as a direct result of Defendant's conduct in violation of the Georgia statutes listed above, as fully demonstrated above.

129.

Based upon the foregoing, the Plaintiff in her capacity as the Administrator of her husband's estate has a cause of action against the Defendants, and in that capacity she is entitled to an award of actual damages, punitive damages and attorney's fees as set out under OCGA §10-1-853.

## COUNT VII - BREACH OF CONTRACT

130.

Arthur Lloyd entered into a contract for the provision of long term nursing care, treatment and services with the Defendants in this action, and pursuant to that agreement the Defendants had a duty to exercise ordinary care in the provision of care, treatment and services to Mr. Lloyd. The Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Mr. Lloyd, and he sustained serious personal injury, illness, infection, pain and suffering and death as a result.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
artersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
306 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

131.

In the wrongful acts and omissions described in detail above and in the insufficiency of care, treatment and services outlined herein, the Defendants failed to provide the services that they promised to provide pursuant to the contract for services entered between the Defendants and Arthur Lloyd.  The Defendants therefore breached the contract for services as set out herein.

132.

As a result of the foregoing, Plaintiff Shirley Lloyd in her capacity as Administrator of Arthur Lloyd's estate is entitled to recover all amounts paid to obtain services under the contract and all consequential damages arising there from.

## COUNT VIII – WRONGFUL DEATH

133.

As set out above, Arthur Lloyd sustained grievous injuries, illness, infection, suffered tremendously, and ultimately died as a direct result of the Defendants' acts and omissions in his care and treatment which constituted violations of federal and state law, professional negligence, simple negligence, and negligence per se.

134.

Mr. Lloyd is survived by his wife, Plaintiff Shirley Lloyd.

135.

As a result of the Defendants' violations of federal and state law, professional negligence, simple negligence and negligence per se and Mr. Lloyd's resultant death as set out in detail above, Plaintiff Shirley Lloyd is entitled to recover damages against the

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

Defendants for Mr. Lloyd's wrongful death in an amount equal to the full value of the life of the deceased.

## COUNT IX - ESTATE'S TORT CLAIMS

136.

Plaintiff Shirley Lloyd is the Administrator of the Estate of Arthur Lloyd, and she prosecutes these claims in that capacity.

137.

As set out above, Mr. Lloyd sustained grievous injuries, illness, infection, pain, suffering and death as a direct result of Defendants' acts and omissions which constitute violations of federal and state law, professional negligence, general negligence and negligence per se.

138.

In her capacity as the Administrator of Mr. Lloyd's estate, Plaintiff Shirley Lloyd is entitled to recover all damages to which Mr. Lloyd would have been entitled had he survived.  As a result of the Defendants' wrongful conduct, Mr. Lloyd incurred medical and related expenses for his care, treatment and services prior to his death, and final expenses. Mr. Lloyd also endured untold pain and suffering as a result of Defendant's negligent acts and omissions prior to his death.

139.

Based on the foregoing, the Plaintiff as Administrator of Arthur Lloyd's estate is entitled to recover from Defendants damages equal to all expenses incurred in the provision of medical care and treatment to Mr. Lloyd resulting from the Defendants' wrongful conduct and to recover for Mr. Lloyd's final expenses.   She is also entitled to recover damages for Mr. Lloyd's conscious pain and suffering prior to his death.

PERROTTA, CANN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
3964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

## COUNT X - IMPUTED LIABILITY

### 140.

All of Arthur Lloyd's injuries, damages and his death were the direct result of the acts and omissions of the agents, servants and employees of the Defendant business entities conducted within the course and scope of each individual's employment with the Defendant business entity health care providers.

### 141.

The Defendant business entities are therefore vicariously liable for the individual employee and agent's acts and omissions, and for each individual officer, director, employee, agent and servant's negligent acts and omissions, and the resultant injuries, damages and death of Arthur Lloyd by application of the doctrine of respondeat superior. The Plaintiffs are therefore entitled to recover damages from the Defendants as set out below.

## COUNT XI - JOINT ENTERPRISE

### 142.

At the time of the negligent acts and omissions and the Plaintiff's resultant injuries, damages and death described above, the Defendants combined their property and labor in a joint undertaking for the provision of long-term nursing home care, treatment and services for a fee. Each had rights of mutual control over the residence, care, treatment and services provided to Mr. Lloyd while he was a resident at SCM.

### 143.

By virtue of the foregoing, all of the Defendants are liable to the Plaintiffs herein for money damages as set out below by application of the joint enterprise theory of recovery.

PERROTTA, CAHN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
306 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

## COUNT XII - PUNITIVE DAMAGES

### 144.

At all times material hereto, the nursing home Defendants were required to satisfy the provisions of Sections 1819 and 1919 of the Social Security Act in order for SCM to qualify to participate as a skilled nursing facility in the Medicare Program and as a nursing facility under the Medicaid Program.

### 145.

The federal regulations of the U.S. Department of HHS at 42 CFR§483.1 et seq. are designed in whole or in part to protect the health and welfare of residents in facilities such as SCM.

### 146.

At all times relevant to this action, the nursing home Defendants were required to be in substantial compliance with each of the requirements for long-term care facilities established by the Secretary of Health and Human Services in 42 CFR §483.1 et seq. in order for SCM to qualify to participate as a skilled nursing facility in the Medicare Program and as a nursing facility in the Medicaid Program.

### 147.

During the years surrounding the residence of Arthur Lloyd, the Georgia Department of Human Resources conducted a number of surveys of SCM's facility and in so doing consistently found that this facility failed to comply with numerous requirements of the Rules and Regulations of the U.S. Department of Health and Human Services. DHR also found a number of violations of Georgia state regulations with respect to the operation of long term care facilities, and found general health and environmental safety violations on SCM's premises. A number of these deficiencies are described below.

Page 40 of 57

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
artersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

At all times material hereto, the Defendants were required to satisfy the provisions of Sections 1819 and 1919 of the Social Security Act in order to qualify to participate as skilled nursing facilities in the Medicare Program and as nursing facilities under the Medicaid Program.

148.

On January 12, 2004 the Georgia DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

149.

During the January 12, 2004 inspection survey, the DHR found that Specialty Care and Kindred failed to provide the necessary care and services to attain or maintain the highest level of physical, mental and psychosocial well being of the residents,

150.

In the January 12, 2004 survey, the surveyors found that Specialty Care and Kindred deficiencies constituted violations of the federal regulations including 42 CFR §483.25.

151.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

PERROTTA, CANN &
PRIETO, P.C

*Main Office*
Historic Bradley Building
5 South Public Square
artersville, Georgia 30120
770-382-8900
Toll Free (866) 382-4900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
'06 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
364 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

152.

On February 27, 2004 the Georgia DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

153.

During the February 27, 2004 inspection survey, the DHR found that Specialty Care and Kindred failed to provide the necessary care and services to attain or maintain the highest level of physical, mental and psychosocial well being of the residents,

154.

In the February 27, 2004 survey, the surveyors found that Specialty Care and Kindred deficiencies constituted violations of the federal regulations including 42 CFR §483.25.

155.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

156.

On April 27, 2004 the DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1733
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

157.

During the April 27, 2004 inspection survey, the DHR found a significant number of deficiencies in Defendants Specialty Care and Kindred's facility.

158.

Among their various findings of Specialty Care and Kindred's non-compliance at that time, the DHR survey found the following:

a)  Failure to properly notify the physician and responsible family member of patient resident injuries,

b)  Employing persons with a history of abusing, neglecting or mistreating residents,

c)  Failure to properly prepare resident comprehensive assessments,

d)  Failure to properly supervise residents and provide assistance devises to prevent accidents.

159.

In the April 27, 2004 survey, the surveyors found that Specialty Care and Kindred's deficiencies constituted numerous violations of the federal regulations including, but not limited to violations of the following: 42 CFR §483.10(b)(11), 42 CFR §483.13(c)(1)(ii), 42 CFR §483.20(k)(2) and 42 CFR §483.25(h)(2).

160.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

Page 43 of 57

PERROTTA, CAHN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

161.

On September 29, 2004 the DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

162.

During the September 29, 2004 inspection survey, the DHR found a significant number of deficiencies in Defendants Specialty Care and Kindred's facility.

163.

Among their various findings of Specialty Care and Kindred's non-compliance at that time, the DHR survey found the following:

a) Employing persons with a history of abusing, neglecting or mistreating residents,

b) Failure to provide the necessary care and services to attain or maintain the highest level of physical, mental and psychosocial well being of the residents,

c) Failure to notify the physician of resident's medical condition.

164.

In the September 29, 2004 survey, the surveyors found that Specialty Care and Kindred's deficiencies constituted numerous violations of the federal regulations including, but not limited to violations of the following: 42 CFR §483.13(c)(1)(ii), 42 CFR §483.25 and 42 CFR §483.75(j)(2)(ii).  The DHR also found a number of facility safety violations during that survey.

PERROTTA, CAHN &
PRIETO, P C.

Main Office
Historic Bradley Building
5 South Public Square
artersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
'06 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
119 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

165.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

166.

On March 16, 2005 the DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

167.

During the March 16, 2005 inspection survey, the DHR found a significant number of deficiencies in Defendants Specialty Care and Kindred's facility.

168.

Among their various findings of Specialty Care and Kindred's non-compliance at that time, the DHR survey found the following:

a) Failure to maintain resident's personal privacy and the confidentiality of clinical records,

b) Failure to maintain an environment that respects the resident's dignity and respect,

c) Failure to provide the necessary care and services to attain or maintain the highest level of physical, mental and psychosocial well being of the residents,

d) Failure to provide for the needs of residents suffering from urinary incontinence,

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
3664 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

169.

In the March 16, 2005 survey, the surveyors found that Specialty Care and Kindred's deficiencies constituted numerous violations of the federal regulations including, but not limited to violations of the following: 42 CFR §483.10(d)(3), 42 CFR §483.15(a), 42 CFR §483.25 and 42 CFR §483.25(d)(2).

170.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

171.

On April 26, 2005 the Georgia DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

PERROTTA, CANN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
06 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
464 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

172.

During the April 26, 2005 inspection survey, the DHR found that Specialty Care and Kindred failed to provide the necessary care and services to attain or maintain the highest level of physical, mental and psychosocial well being of the residents.

173.

In the April 26, 2005 survey, the surveyors found that Specialty Care and Kindred deficiencies constituted violations of the federal regulations including 42 CFR §483.25.

Page 46 of 57

174.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

175.

On June 21, 2005 the Georgia DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

176.

During the June 21, 2005 inspection survey, the DHR found that Specialty Care and Kindred failed to provide the necessary care and services to attain or maintain the highest level of physical, mental and psychosocial well being of the residents.

177.

In the June 21, 2005 survey, the surveyors found that Specialty Care and Kindred deficiencies constituted violations of the federal regulations including 42 CFR §483.25.

178.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
205 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

179.

On October 13, 2005 the DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

180.

During the October 13, 2005 inspection survey, the DHR found a significant number of deficiencies in Defendants Specialty Care and Kindred's facility.

181.

Among their various findings of Specialty Care and Kindred's non-compliance at that time, the DHR survey found the following:

a) Failure to provide the necessary care and services to attain or maintain the highest level of physical, mental and psychosocial well being of the residents,

b) Failure to maintain an accident free environment for residents,

c) Failure to maintain an acceptable medication error rate,

d) Failure to properly label drugs and biologicals,

e) Failure to take appropriate measures to avoid spreading of infections in the facility,

f) Failure to ensure that residents were receiving care from properly qualified nurse's aides.

182.

In the October 13, 2005 survey, the surveyors found that Specialty Care and Kindred's deficiencies constituted numerous violations of the federal regulations including,

PERROTTA, CAHN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
3964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

but not limited to violations of the following: 42 CFR §483.25, 42 CFR §483.25(h)(1), 42 CFR §483.25(m)(1), 42 CFR §483.60(d), 42 CFR §483.65(b)(3) and 42 CFR §483.75(f). The DHR also found a number of facility safety violations during that survey.

183.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

184.

On December 21, 2005 the Georgia DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

185.

During the December 21, 2005 inspection survey, the DHR found that Specialty Care and Kindred failed to properly notify resident's physicians and responsible family members of an injury that may significantly alter their medical condition.

186.

In the December 21, 2005 survey, the surveyors found that Specialty Care and Kindred deficiencies constituted violations of the federal regulations including 42 CFR §483.10(b)(11).

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
'amersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
'964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

187.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

188.

On November 8, 2006 the Georgia DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

189.

During the November 8, 2006 inspection survey, the DHR found a significant number of deficiencies in Defendants Specialty Care and Kindred's facility.

190.

Among their various findings of Specialty Care and Kindred's non-compliance at that time, the DHR survey found the following:

a) Failure to allow residents to chose activities, schedules and healthcare according to their interests and needs,

b) Failure to prepare appropriate resident assessments,

c) Failure to provide services to residents by qualified persons in accordance with patient care plans, and

d) Failure to properly document resident assessments.

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 273-6022
Fax (706) 275-6076

191.

In the survey, the surveyors found that Specialty Care and Kindred's deficiencies constituted numerous violations of the federal regulations including, but not limited to violations of the following: 42 CFR §483.15(b), 42 CFR §483.20(g)-(j), 42 CFR §483.20(k)(3)(ii) and 42 CFR §483.20(f). The DHR survey also found violations of NFPA Life Safety Code Standards.

192.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR were forced to threaten termination of these Defendants' provider agreements.   Defendant to required to immediately submit a plan to reach compliance with the requirements for operation of a nursing home.

193.

On January 12, 2007 the DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

194.

During the January 12, 2007 inspection survey, the DHR found a significant number of deficiencies in Defendants Specialty Care and Kindred's facility.

195.

Among their various findings of Specialty Care and Kindred's non-compliance at that time, the DHR survey found the following:

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
06 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
164 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

a) Failure to properly notify the physician and responsible family member of patient resident injuries,

b) Failure to provide the necessary care and services to attain or maintain the highest level of physical, mental and psychosocial well being of the residents,

c) Failure to provide proper care for residents suffering from urinary incontinence,

d) Failure to provide appropriate and necessary medical, dental and nursing care to residents.

196.

In the January 12, 2007 survey, the surveyors found that Specialty Care and Kindred's deficiencies constituted numerous violations of the federal regulations including, but not limited to violations of the following: 42 CFR §483.10(b)(11), 42 CFR §483.25 and 42 CFR §483.25(d). The DHR also found that the facility's deficiencies were in violation of Georgia's Patient's Bill of Rights and DHR regulations.

197.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

198.

On August 24, 2007 the Georgia DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

PERROTTA, CAHN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

199.

During the August 24, 2007 inspection survey, the DHR found a significant number of deficiencies in Defendants Specialty Care and Kindred's facility.

200.

Among their various findings of Specialty Care and Kindred's non-compliance at that time, the DHR survey found the following:

e) Failure to properly notify the physician and responsible family member of patient resident injuries,

f) Failure to provide the necessary care and services to attain or maintain the highest level of physical, mental and psychosocial well being of the residents,

g) Failure to provide proper laboratory services for residents,

201.

In the August 24, 2007 survey, the surveyors found that Specialty Care and Kindred's deficiencies constituted numerous violations of the federal regulations including, but not limited to violations of the following: 42 CFR §483.10(b)(11), 42 CFR §483.25, 42 CFR §483.75(j)(1) and 42 CFR §483.75(j)(2)(ii).  The DHR expressly found during this survey that the conditions in Defendants' facility constituted immediate jeopardy to resident health and safety.

202.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR were forced to threaten termination of these Defendants' provider agreements.   Defendant to required to immediately submit a plan to reach compliance with the requirements for operation of a nursing home.

PERROTTA, CAHN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
3964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6078

203.

On January 31, 2008 the Georgia DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

204.

During the January 31, 2008 inspection survey, the DHR found a significant number of deficiencies in Defendants Specialty Care and Kindred's facility.

205.

Among their various findings of Specialty Care and Kindred's non-compliance at that time, the DHR survey found the following:

a) Failure to keep bed and bath linens clean and sanitary,

b) Failure to properly document quarterly resident assessments,

c) Failure to prepare proper comprehensive care plans,

d) Failure to provide proper care for residents suffering from urinary incontinence,

e) Failure to properly maintain clinical records on residents,

206.

In the January 31, 2008 survey, the surveyors found that Specialty Care and Kindred's deficiencies constituted numerous violations of the federal regulations including, but not limited to violations of the following: 42 CFR §483.15(h)(3), 42 CFR §483.20(c), 42 CFR §483.20(d), 42 CFR §483.25(d), 42 CFR §483.75(l)(1), 42 CFR §483.20(d)(3) and

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
'artersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

42 CFR §483.10(k)(2). The DHR also found a number of facility safety violations during that survey.

207.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

208.

On May 14, 2008 the Georgia DHR conducted a survey of the long term care facility owned and operated by Defendants Specialty Care and Kindred to determine whether proper and adequate care and treatment were being provided to its residents, and to ensure that Specialty Care and Kindred were in compliance with the state and federal rules and regulations which were implemented to protect residents of Specialty Care and Kindred.

209.

During the inspection survey, the DHR found a significant number of deficiencies in Defendants Specialty Care and Kindred's facility.

210.

Among their various findings of Specialty Care and Kindred's non-compliance at that time, the DHR survey found that the staff had failed to maintain clinical records on residents in accordance with acceptable standards and practices. In the survey, the surveyors found that Specialty Care and Kindred's deficiencies constituted numerous violations of the federal regulations including, but not limited to violations of the following: 42 CFR §483.75(l)(1). The DHR also found violations of state regulations for the operation of nursing homes during that survey.

Page 55 of 57

PERROTTA, CAHN & PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
106 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

211.

The DHR revisited the facility to ensure compliance with its previous directions on June 20, 2008. Surprisingly, at that time the DHR found that the facility had continued to fail to comply with federal and state regulations as had been directed in May.

212.

As a result of the DHR's findings of violations of the rules and regulations and the requisite substandard care on these two occasions, DHR required this Defendant to submit a plan to reach compliance with the requirements for operation of a nursing home.

213.

As demonstrated above, SCM has a long history of significant failures to comply with both federal and state law. In so doing, the facility for years consistently mistreated its residents and failed to provide even the minimal amount of care that is required of skilled nursing facilities to maintain the health and safety of their residents. The residents of this facility experienced untold pain, suffering and misery as a direct result of these Defendants' conduct.

214.

These repeated, numerous and significant violations of the law demonstrate the Defendant nursing facility's ongoing pattern of willful and wanton misconduct and demonstrate that entire want of care which would raise the presumption of a conscious indifference to the circumstances of their actions and inaction in the provision of care and services to their residents, and to Mr. Lloyd.

215.

The Defendants were well aware of their significant pattern of deficiencies at the time that Arthur Lloyd was admitted to their facility. They nonetheless admitted him to

PERROTTA, CAHN &
PRIETO, P.C.

Main Office
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

Calhoun Office
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

Dallas Office
506 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

Atlanta Office
Buckhead Centre
3064 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

Dalton Office
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

their facility and failed to tell him of their significant history of improper conduct in providing care and treatment to their patients.

216.

Unfortunately, Mr. Lloyd fell victim to the Defendants' patterns of misconduct with respect to the care and treatment of their residents, as outlined in great detail above. Mr. Lloyd suffered and died as a direct result of these Defendants' long standing patterns of serious deficiencies in the provision of care and treatment to their residents.

217.

As a result of the foregoing, the Plaintiffs are entitled to an award of punitive damages against the Defendant nursing home owners and operators as permitted by law.

**WHEREFORE:** the Plaintiff prays for the following:

a) That service of process be had upon each Defendant,

b) That this case be tried before 12 fair and impartial jurors,

c) That judgment be entered against the Defendants in amounts in excess of $10,000.00 with all costs to be taxed against the Defendants,

d) That the Court grant the Plaintiff all other relief that it deems appropriate.

This 7τ4 day of April, 2009.

Michael A. Prieto        by: TL
Georgia Bar No.: 587236
Robert W. Lamb
Georgia Bar No.: 631650
Attorneys for the Plaintiffs

**Perrotta, Cahn & Prieto, P.C.**
5 South Public Square
Cartersville, GA 30120
(770) 382-8900
www.perrottalaw.com

PERROTTA, CAHN &
PRIETO, P.C.

*Main Office*
Historic Bradley Building
5 South Public Square
Cartersville, Georgia 30120
770-382-8900
Toll Free (866) 382-8900
Fax (770) 386-1170

*Calhoun Office*
102 Court Street
Calhoun, Georgia 30701
(706) 629-9699
Fax (706) 629-0869

*Dallas Office*
206 East Memorial Drive
Dallas, Georgia 30132
(770) 445-1723
Fax (770) 445-1942

*Atlanta Office*
Buckhead Centre
2964 Peachtree Road, NW
Suite 450
Atlanta, Georgia 30305
(770) 382-8900
Fax (770) 386-1170

*Dalton Office*
319 Selvidge Street
Dalton, Georgia 30721
(706) 275-6022
Fax (706) 275-6076

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

Gloria Lloyd, Individually and as         )
Administrator of the Estate of Arthur     )
Lloyd, deceased,                          )
                                          )
    Plaintiff,                            )
                                          )   CIVIL ACTION FILE NO.:
v.                                        )
                                          )
Specialty Care of Marietta                )   ~~09-1-0790-94~~
and Kindred Healthcare, Inc.,             )   09-1-03233-18
                                          )
    Defendants.                           )

## AFFIDAVIT

Personally appeared before me, the undersigned officer duly authorized to administer

oaths, Corrie Pierce, RN who, after being duly sworn, deposes and states the following:

1.

The affiant is of sound mind and legal age and is fully competent to testify to the matters

stated herein. The affiant makes this affidavit upon her own personal knowledge unless

otherwise stated herein.

2.

Your affiant is a Registered Nurse licensed to practice nursing in the State of Georgia. I

received my Bachelor's Degree in Nursing from the Medical College of Georgia in 1960. At all

times relevant to this matter, I had been active in the practice of skilled nursing in a long term

care facility for three of the last five years.

3.

For a more detailed description of my credentials, including my education, training,

experience and employment history, I have attached a true and correct copy of my CV to this

affidavit.

4.

Based on the foregoing, I have extensive education, training and experience in all aspects of the provision of nursing care, treatment and services to patients in a medical facility including the following.

5.

Pursuant to my education, training and experience, I am fully familiar with the signs and symptoms of infection in a patient in a nursing home. I have been trained to contact the patient's treating physician to report any signs and symptoms of infection, and to obtain prompt and appropriate medical care and treatment for a patient who has an infection.

6.

Pursuant to my education, training and experience, your affiant is fully familiar with the proper monitoring, maintenance, cleaning, flushing, handling and use of PEG tubes for the maintenance of nutrition and hydration in patients that are unable to take food or liquids orally. Likewise, I am fully familiar with the proper monitoring, maintenance, cleaning, flushing, handling and use of nephrostomy tubes and Foley catheters for maintaining, balancing and monitoring the patient's fluid output.

7.

Pursuant to your affiant's professional education, training and experience, I am fully familiar with the incidence of skin breakdown in patients in a medical facility. I am fully familiar with the causes of skin breakdown and the proper monitoring of patients for signs and symptoms of skin breakdown. I am familiar with all aspects of care, treatment and services for the prevention and treatment of skin breakdown in patients, and I am also familiar with the proper monitoring, cleaning and maintaining patient's tube insertion sites.

8.

I have been trained to provide care and services necessary to address patients with diabetes. I am trained to recognize when there is difficulty maintaining the diabetic patient's blood glucose levels, and to report that difficulty to the patient's treating physician.

9.

Also as a result of my education, training and experience, your affiant is familiar with development and implementation of assessments and care plans addressing the patients needs for care and treatment, and the patient's needs with respect to the activities of daily living. This includes the developments of care plans for addressing patient's feeding and output tubes, diabetes, risk of infection and prevention and treatment of bed sores.

10.

I have been trained to fully and accurately comply with all physicians' orders for nursing care and services provided to the patient.

11.

As a result of my education, training and experience outlined above, I am well qualified to testify as to the acceptable standards of care with respect to the following aspects nursing care.

12.

The standard of care for long term patient care facilities requires that the nursing staff provide appropriate care, treatment and services to residents who have signs and symptoms of severe infection, to notify the treating physician of the signs and symptoms of severe infection, and to provide prompt and appropriate medical care to patients who exhibit signs and symptoms of severe infection.

13.

Signs and symptoms of severe infection or other severe medical condition exhibited by

Arthur Lloyd include productive cough with yellow green sputum, respiratory distress, drooling

with an altered level of consciousness, a significant change in mental status; lethargy, elevated

and irregular heart beat, elevated blood pressure.  Other signs of infection include a nephrostomy

tube was draining thick, dark urine and elevated temperature.

14.

The standard of care for long term patient care facilities requires that nursing staff

provide appropriate care, treatment and services related to the patient's PEG tube, so as to avoid

infection and maintain appropriate levels of nutrition and hydration in the patient who is unable

to take food or fluids by mouth.

15.

Such care, treatment and services include careful monitoring to ensure that tubes are

maintained in a clean, sanitary condition, and that they do not become blocked.  PEG tubes must

be flushed per doctor's orders to avoid blockage and to ensure that the patient receives all of the

fluid necessary to maintain proper hydration.

16.

The standard of care for long term patient care facilities requires that nursing staff follow

physician's orders to the letter to maintain proper patient hydration levels at all times.  Proper

hydration can be achieved by proper handling of PEG tubes as described above.

17.

The standard of care for long term patient care facilities requires that nursing and non-

professional staff provide appropriate care, treatment and services to residents who have been

determined to be at high risk for the development of pressure ulcers.

18.

Measures to prevent skin breakdown include careful patient monitoring, proper charting

of the condition of the patient's skin, implementation of a program for turning the patient in his bed, providing pressure relieving devises, and keeping pressure points dry and clean.

19.

When a resident patient has developed pressure ulcers, the standard of care for nursing care facilities requires that the staff properly develop and follow the care plan, Resident Assessment Protocols and physician's orders and to provide appropriate care, treatment and services to address the patient's pressure ulcers.

20.

Proper measures for the care and treatment of patients who have experienced skin breakdown include careful patient monitoring, proper charting of the condition of the skin breakdown and proper charting of the course of treatment for skin breakdown. Measures also include following a program of turning the patient in bed, providing appropriate and timely pressure relieving devises and maintaining proper wound care, medicines and dressings as ordered by the physician. Nurses are also required to fully communicate the condition of the patient's skin to the treating physician, and to follow physician's orders with respect to the care and treatment of pressure ulcers.

21.

The standard of care for nursing staff in a long-term care facility requires that the staff follow the requirements of the care plan and physician's orders with respect to the proper handling of patient's feeding and output tubes, proper care for diabetes, proper measures for avoiding and addressing patient infection and proper prevention and treatment of bed sores.

22.

Your affiant has reviewed medical records and charts with respect to the care and treatment of patient Arthur Lloyd generated by Specialty Care of Marietta and Kennestone

Hospital. I have also reviewed Arthur Lloyd's Certificate of Death. In addition, I am familiar with the allegations of the complaint to which this affidavit is attached.

23.

Based upon my review of the records, I have learned the following, which I will assume to be true for purposes of this affidavit:

24.

Mr. Lloyd was 74 years old. He had a number of medical conditions including a history of CVA. He had atrial fibrillation, Type II diabetes mellitus and hypertension. After a period of hospitalization, on April 12, 2007 Mr. Lloyd was transferred from Kennestone Hospital to Specialty Care. At the time, Mr. Lloyd had a recent history of aspiration pneumonia.

25.

Mr. Lloyd was in reasonably good health and in stable condition when he entered Specialty Care. Recent testing had shown that his WBC and liver function showed mild anemia and renal failure. At the time of his admission, Mr. Lloyd had a PEG tube. According to physician's orders, Mr. Lloyd was to receive all of his nutrition and hydration through the feeding tube; he was not to eat or drink orally. He also had a nephrostomy tube and Foley catheter for fluid output.

26.

After his admission to Specialty Care, the staff conducted a resident assessment and prepared a care plan to identify Mr. Lloyd's needs with respect to his activities of daily living, and to determine his health status and needs.

27.

In their assessment and care plan, the staff noted Mr. Lloyd's feeding and output tubes. The staff noted specifically that he was at high risk for dehydration as a result of his feeding

tube, inability to take liquids orally, immobility, incontinence, medications, and other factors.

28.

The resident assessment and care plan noted that Mr. Lloyd was totally dependant upon the Specialty Care staff for the activities of daily living including bed mobility, transfers, facility and room mobility, feeding, dressing and hygiene.

29.

In their resident assessments and care plans, Specialty Care noted that Mr. Lloyd had some skin alteration on the left flank area and one leg, but there was no specific mention of any bed sores when he entered the facility; however, he was at risk for the development of pressure ulcers. The staff therefore noted that measures were necessary for the avoidance of pressure ulcers including the use of pressure relieving devises, a program of turning and repositioning Mr. Lloyd in his bed, and preventive skin care and medication.

30.

During his residence at Specialty Care, the staff did not properly flush and clean Mr. Lloyd's feeding tube. As a result, Mr. Lloyd became severely dehydrated over a significant period of time. Dehydration aggravated Mr. Lloyd's developing infection, renal failure and rendered his diabetes uncontrollable.

31.

Specialty Care staff did not properly monitor, flush and clean Mr. Lloyd's output tubes. The staff did not properly address other medical conditions such as constipation and UTI.

32.

The staff failed to provide adequate measures for the avoidance of decubitus ulcers as identified and required in Mr. Lloyd's care plan. As a result, Mr. Lloyd developed a pressure ulcer on his right buttock and other ulcers on his right leg during his residence at the facility.

There is no note that the staff took any measures at all to address Mr. Lloyd's developing pressure ulcers.

33.

As a result of the foregoing, Mr. Lloyd had a number of potential sources for infection including infected tube insertion sites, decubitus ulcers and UTI. Mr. Lloyd developed a significant infection while at Specialty Care. Aggravated by his severe dehydration, Mr. Lloyd developed a severe systemic infection which lead ultimately to his death.

34.

On a number of occasions, the staff noted the signs and symptoms of severe infection, but they failed to report the condition to his treating physician, or to get him timely medical care to address the infections.

35.

On April 18, 2007 the staff noted a sign of infection. Mr. Lloyd had a productive cough with yellow green sputum. A nurse practitioner examined him but no sputum culture or treatment was performed.

36.

Another sign of infection occurred on April 21, 2007. At that time, a staff nurse noted that Mr. Lloyd was in respiratory distress. Mr. Lloyd was found drooling with an altered level of consciousness. The doctor was contacted and ordered Specialty Care to transport Mr. Lloyd to the ER evaluation. The nurse called 911, but then cancelled the call before EMS arrived. She did not notify the doctor that she cancelled the call.

37.

Yet another sign of Mr. Lloyd's developing infection occurred on April 30. At that time

Mr. Lloyd was noted to have a significant change in mental status; he had become very lethargic. He also had weakness in his arm and was no longer able to lift it. His heart rate was elevated and irregular, his blood pressure was elevated. This was the second episode of an abrupt change in Mr. Lloyd's baseline.

<div align="center">38.</div>

Also at that time, the staff noted that Mr. Lloyd's blood sugar level was high at 398. This was likely a result of dehydration.

<div align="center">39.</div>

Labs drawn on May 7 showed a progression in Mr. Lloyd's renal failure, yet another evidence of infection.

<div align="center">40.</div>

Repeated testing on May 7 and 8 of 2007 revealed that Mr. Lloyd had high blood sugar concentration. Once again, this was evidence of his increasing dehydration.

<div align="center">41.</div>

More evidence of Mr. Lloyd's developing infection occurred on May 8. After noticing decreased output from Mr. Lloyd's nephrostomy tube, an LPN flushed the tube and got back cloudy yellow urine with "whitish particles" in it. Later, the nephrostomy bag drained dark, thick urine. Mr. Lloyd was noted as having a high temperature at the time. The nurse practitioner ordered a urinalysis, culture and sensitivity which showed significant infection.

<div align="center">42.</div>

On May 9, a chest x-ray revealed modest right lower lobe, and slight left lower lobe infiltrates, meaning that Mr. Lloyd had developed pneumonia.

<div align="center">43.</div>

On May 14, 2007, a complete blood count and comprehensive metabolic panel were

they failed to develop and follow resident assessment protocols and care plan for the care and treatment of pressure ulcers and impaction, failed to implement a program of turning Mr. Lloyd in his bed, failed to promptly provide pressure relieving devises and failed to properly maintain wound care and wound dressings. The staff also breached the standard of care expected of nursing staff when they failed to fully communicate the development of Mr. Lloyd's pressure ulcers to his treating physician, failed to follow physician's orders with respect to the care and treatment provided for Mr. Lloyd's pressure ulcers, failed to properly monitor Mr. Lloyd's developing pressure ulcers, failed to properly record information about Mr. Lloyd's developing pressure ulcers and failed to properly chart their course of care and treatment for Mr. Lloyd's developing pressure ulcers.

64.

The nursing staff breached the standard of care required of nursing staff in a long-term care facility when they failed to follow Mr. Lloyd's care plan with respect to the above aspects of patient care, treatment and services.

65.

As a result of Specialty Care's staff's breaches of the standards of care required of long-term care facility nursing staff, Arthur Lloyd developed a serious, systemic infection and severe dehydration which ultimately lead to serious illness, pain suffering, and death.

66.

Further affiant sayeth not.

This _6_ day of ___April___, 2009.

_____

Corrie Pierce, RN


_____

Sworn to and subscribed before me
this ___6___ day of __April_____ 2009.


Notary Public
My commission expires:   7-10-11

BRADLEY J. HALL
NOTARY PUBLIC, DEKALB COUNTY, GEORGIA
MY COMMISSION EXPIRES JULY 10, 2011

Resume of
Corrie K. Pierce
1151 Valley Drive
Conyers, Georgia 30012
(770) 761-0994

**Education:**

Medical College of Georgia
School of Nursing
Augusta, Georgia
Bachelor of Science in Nursing

**Experience:**

Several years in Acute Care at hospitals in Macon and
Atlanta: Macon City Hospital, Veterans Administration
Hospital and Crawford W. Long Hospital

Experience in Long Term Care began at Westbury Nursing
Home in Conyers as Staff Nurse and Staff Development
Coordinator in January 1973. In January 1974 I was
promoted to Director of Nursing and I remained there until
January 1976 when I accepted another job at a higher salary.

Nursing Team Leader
Visiting Nurse Association of
Metropolitan Atlanta
Atlanta, Georgia
1976 - 1978

Caseload involved a group of Nursing Home eligible patients
in a pilot program where they were cared for at home.

Administrator
Snellville Nursing and Rehabilitation
Center, Inc
(120 Bed IC Facility)
Snellville, Georgia
1978 - 1982 (Business sold)
This included functioning as RN Consultant during first two
years.

Health Service Centers
Roswell, Georgia
1983 - 1987
*(Employment with Health Service Centers included five
months employment at Great Oaks Nursing Home in Roswell.
In February of 1984 I was promoted to Administrator of
Cedar Hill Nursing Home in Athens.  The business has since
been leased.

RN Supervisor (Infection Control and Staff Development)
Starcrest Nursing Home
Lithonia, Georgia 30058
July 1987 - April 1988

Nurse Consultant
Beverly Enterprises
Quality Assurance
Virginia Beach, Virginia
April 1988 - November 1991
Responsible for Nursing Quality Assurance Reviews in all
Ga. Homes.

Nurse Consultant
Institutional Pharmacy Consultants
Griffin, Georgia
November 1991 - December 1993

Director of Nursing
New London Health Care
2020 McGee Road
Snellville, Georgia 30278
December 1993 - November 1996

R. N. Supervisor and MDS Coordinator of
60 bed Medicare Unit
Star Crest of Lithonia
Lithonia, GA
Nov. 1996 - October 1998

Nurse Consultant
Institutional Pharmacy Consultants
816 Everee Inn Road
Griffin, GA
October 1998 — December 2000
(Company went out of business)

Director of Nursing
Social Circle Nursing Home
Social Circle, GA
February 2001 — December 2001
(I left because of job offer at a much higher salary)

Director of Nursing
Arrowhead Health Care
239 Arrowhead Boulevard
Jonesboro, GA
December 2001 — January 2004

MDS Coordinator
College Park Health Care
College Park, GA
January 2004 — December 2005
(I left because of job offer at a much higher salary
and a location much closer to where I live)

Director of Nursing
The Seasons Nursing and Rehabilitation Center
December 27, 2004 — August 2005

Interim Director of Nursing
Magnolia Manor Nursing Home
St. Simons Island, GA
March and April 2007

**Summary of Qualifications:**    In addition to my full time job, from August 1998 until August 2002, I was the Nurse Consultant for a local Day Care for the Elderly. My primary functions were monitoring resident care, including review of weights and vital signs, giving in-service training classes for the staff, maintaining monthly progress notes and current Care Plans on each resident.

Over thirty years experience in the medical field, most of which has been in teaching and supervision. Strong background in organization and working with people.

Have taken advantage of numerous opportunities for continuing education courses, both in nursing and in supervision.

References available upon request.

SUMMONS

COBB COUNTY, GA
FILED IN OFFICE

09 APR -8 AM 8:52

**IN THE SUPERIOR/STATE COURT OF** _Cobb_ **COUNTY**

**STATE OF GEORGIA**

~~Jay C. Stephenson~~
COBB SUPERIOR COURT CLERK

Gloria Lloyd, Individually and
as administrator of the Estate
of Arthur Lloyd, deceased

**PLAINTIFF**

**CIVIL ACTION
NUMBER** _09 - 1 - 03233 - 18_

VS

Specialty Care of Marietta
and Kindred Healthcare, Inc.

**DEFENDANT**

09 APR -8  AM 9:00
COBB CO. SHERIFF'S OFF.
CIVIL SECTION

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Michael A. Prieto
5 South Public Square
Cartersville, GA 30120

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ___08___ day of ___April___, 20_09_.

Clerk of Superior/State Court

BY ___Jay C. Stephenson___

Deputy Clerk

INSTRUCTIONS  Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

ARCO IDEAS & DESIGN INC (770) 386-2700

SHERIFF'S ENTRY OF SERVICE                    SC-85-2

Civil Action No. _09-1-0373?'11_

Date Filed _04/09/2009_

| | Superior Court | ☒ | Magistrate Court | ☐ |
| | State Court | ☐ | Probate Court | ☐ |
| | Juvenile Court | ☐ | |
| | Georgia, _Cobb_ COUNTY | | |

_Glacia Lloud, Individually, and as_
_Administrator of the Estate of Arthur Lloyd_

Attorney's Address

Michael A. Prieto
5 South Public Square
Cartersville GA 30120

~~deceased~~ deceased                    **Plaintiff**

VS.

_Specialty Care of Marietta_
_and Kindred Healthcare, Inc._          **Defendant**

Name and Address of Party to be Served
Specialty Care of Marietta
ATTN: Valerie Hamilton

26 Tower Road

Marietta, GA 30060

                                        **Garnishee**

Interrogatories + Request for Production of Documents Attached

**SHERIFF'S ENTRY OF SERVICE**

**PERSONAL**
☐ I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS**
☐ I have this day served the defendant _____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows
age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
☑ Served the defendant _Specialty Care of Marietta_, a corporation
by leaving a copy of the within action and summons with _Cheryl Hamilton_
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**
☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in
an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing
notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
☐ Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This _17_ day of _Apr_, 20_09_

_____
**DEPUTY**

SHERIFF DOCKET_____ PAGE_____
WHITE-CLERK  CANARY-PLAINTIFF  PINK-DEFENDANT

ARCO IDEAS & DESIGN, INC (770) 386-2799

FILED IN CLERK'S OFFICE
U.S.D.C - Atlanta

MAY 1 5 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **GLORIA LLOYD, Individually and**<br>**as Administrator of the Estate of**<br>**ARTHUR LLOYD, deceased,** | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| **v.** | )<br>) |
| **SPECIALTY CARE OF**<br>**MARIETTA and KINDRED**<br>**HEALTHCARE, INC.,** | )<br>)<br>)<br>) |
| **Defendants.** | ) |

**CIVIL ACTION FILE**
**NO. 1-09-CV-1302**

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a copy of the foregoing **NOTICE OF REMOVAL** to be served upon all parties to this action by depositing a copy of same in the United States mail, postage prepaid, addressed as follows:

> Michael A. Prieto
> Robert W. Lamb
> Perrotta, Cahn & Prieto, P.C.
> 5 South Public Square
> Cartersville, GA  30120

This 15th day of May, 2009.

CARLTON FIELDS
One Atlantic Center, Suite 3000
1201 West Peachtree Street, N.E.
Atlanta, GA  30309
Telephone: (404) 815-3400
Facsimile:  (404) 815-3415

Christopher B. Freeman
Georgia Bar No. 140867
Attorney for Defendants

14988957 1